IN THE OREGON TAX COURT
REGULAR DIVISION

HOYT STREET PROPERTIES LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*and*

MULTNOMAH COUNTY ASSESSOR,
*Defendants.*

(TC 4713)

Neil R. Bryant, Bryant, Lovlien & Jarvis, Bend, argued the cause for Plaintiff (taxpayer).

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

John S. Thomas, Deputy Multnomah County Counsel, Portland, Attorney argued the cause for Defendant Multnomah County Assessor (the county).

Decision for Defendants rendered July 14, 2005.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This matter comes before the court on a motion submitted by Defendant Department of Revenue (the department) to dismiss the Complaint filed by Plaintiff (taxpayer).[1] Although Defendant Multnomah County Assessor (the

---

[1] The department filed a motion to dismiss "[p]ursuant to TCR 14A." Attached to that motion, the department submitted a number of exhibits, including one affidavit. In its reply memorandum the department characterized its motion as a motion for summary judgment. At oral argument the department indicated that it based its initial motion on TCR 21 A(9). Neither TCR 21 A(8) nor TCR 21 A(9), which is based on ORCP 21 A(9), contemplate the filing of supporting exhibits or affidavits. *Cf. Black v. Arizala*, 337 Or 250, 264, 95 P3d 1109 (2004) ("ORCP 21 A(8) does not permit the trial court to rely on facts beyond those pleaded in the complaint in deciding the legal sufficiency of the complaint"). *See also Krauel v. Dykers Corp.*, 173 Or App 336, 340 n 6, 21 P3d 1124 (2001). The court also notes that TCR 21 excludes motions under subsections A(8) and A(9) from the category in which affidavits and other evidence may be submitted.

As to whether this matter may proceed as a motion for summary judgment, that is also problematic because the parties have not in all cases provided exhibits and attachments authenticated as required by TCR 47. The court need not address those issues, however, because the parties agreed at oral argument to stipulate to the record before the court at the time of the oral argument and to proceed as if the department had filed a motion for summary judgment and taxpayer had opposed that motion. That stipulated record includes the department's motion and reply memoranda, taxpayer's response memorandum, and the attached exhibits, affidavits, and other documents.

The court notes, however, that in other cases the moving party's choice between a motion to dismiss and a motion for summary judgment may be critical because the methodology of review differs as between the different motions. For example, in reviewing a motion to dismiss, the court must view all allegations in a plaintiff's complaint as true, *see Lourim v. Swensen*, 328 Or 380, 384, 977 P2d 1157 (1999); in reviewing a motion for summary judgment, the court views the record in the favor of the nonmoving party, providing all reasonable inferences, TCR 47 C. Here such distinctions are not relevant in light of the stipulation of the parties.

county) did not file a motion or memorandum related to this issue, it joins in the department's motion.[2] The county also appeared and presented its position at the oral argument held in this matter.

## II.  FACTS

Taxpayer has owned the property at issue in this appeal (the property) for many years. The property has more than one tax lot. Before the events underlying this appeal, the property was classified as railroad property and was subject to central assessment under ORS 308.505 to 308.665.[3] On March 27, 2000, the department issued Property Classification Memorandum # 2000-045 (the PCM), which removed the property from central assessment and made it subject to the county's assessment jurisdiction as of January 1, 1998.[4]

On August 14, 2000, and pursuant to the omitted property authority and procedures under ORS 311.219, the county sent two so-called "twenty-day" letters (one for each tax lot affected by the PCM) to taxpayer. In those letters, the county advised taxpayer that the property would be placed on the county's tax rolls for the 1998-99 and 1999-2000 property tax years and informed taxpayer as to the proposed value for each tax lot. Subsequent to the mailing of those letters, taxpayer met with the county in an effort to change the county's determination. Further meetings were held over the next few months.

On November 14, 2000, the county placed the property on the tax rolls for local assessment. The county mailed notices to taxpayer that stated, in part:

> "If you disagree with the amount of the assessment, you have the *right to appeal* to the Magistrate Division of the Oregon Tax Court *within 90 days after the correction to the tax roll was made.* * * * *If you decide not to appeal to the*

---

[2] For simplicity, the court refers to this matter as a motion or argument from the department. The court's ruling in this matter resolves matters between taxpayer and the county as well as those between taxpayer and the department.

[3] All references to the Oregon Revised Statutes (ORS) are to the 1999 edition.

[4] The department appears to have been acting pursuant to its statutory roles under ORS 308.510(5), ORS 308.515, and ORS 308.517. *Cf.* OAR 150-308.515.

*Magistrate Division, you will have no other appeal opportunities."*

(Emphasis added.) The 90-day appeal period expired February 12, 2001.

Thereafter the parties continued to engage in discussions related to the county's assessment actions. In particular, the parties focus on a number of written communications between December 2000 and March 2001. Those communications are summarized as follows.

On December 12, 2000, Michael Simpson (Simpson), taxpayer's Controller, e-mailed Tiffany Sweitzer (Sweitzer) and Keith Vernon (Vernon), two partners of taxpayers, stating, "I spoke to the [department] about the status of the 1998 taxes. The [department's] position is that BN should be responsible for 1998. The county disagreed but told the [department] that they were doing some more research on it so the state was waiting to hear from them."

On December 19, 2000, county employee Bob Ellis e-mailed two department employees stating, "Attached are three documents * * * that all relate to our review and analysis of the usage of the Hoyt Street Yards. Perhaps this information will assist your counsel in the [department] in their attempt to advise whether they think that the property should be centrally or locally assessed." That e-mail communication was forwarded to Simpson.

On December 20, 2000, Simpson e-mailed Sweitzer and Vernon stating, "I spoke to the [department] today regarding the 1998 taxes. They have forwarded all information to the assistant attorney general's office for an opinion and expect to have an answer mid January. * * * Linda Blacklock [(Blacklock), an employee of the department,] feels the county will probably abide by whatever the AG recommends."

On December 27, 2000, Blacklock e-mailed Simpson stating, "After reviewing this information, the staff here and the Assistant Attorney General working on this is leaning toward agreement with the county. Please let me know if there is any information that is not accurate or if you have other input you'd like considered as we decide this issue."

On January 31, 2001, Simpson sent a letter to the department indicating that he believed the property should be assessed as railroad property. Simpson concluded that letter by stating, "Please contact me if you need any additional information or have any questions. I am anxious to hear the decision of the state."

Thereafter, the parties continued to communicate, primarily by e-mail. Those communications did not result in a resolution to the parties' dispute. On October 19, 2001, taxpayers filed an appeal in the Magistrate Division. In that division, Defendants moved to dismiss the action for similar reasons as those expressed in this matter. Although the magistrate agreed that taxpayers had missed the statutory deadline, he ruled in favor of plaintiff on an estoppel theory. Later the magistrate addressed the substantive legal dispute between the parties. Taxpayer appealed from that decision and the department responded with the motion to dismiss at issue here.

## III.  ISSUE

Should the court dismiss taxpayer's Complaint?

## IV.  ANALYSIS

The department asserts that taxpayer's Complaint must be dismissed because it was not timely filed and no exception to the statutory time requirements exists. Although it does not take issue with the factual assertion that it filed its appeal after February 12, 2001, taxpayer contends that the department and the county are estopped from pursuing a timeliness defense because taxpayer relied on allegedly misleading conduct of Defendants.

■     Under the controlling statutes, taxpayer's appeal was required to be filed in the Magistrate Division within 90 days of November 14, 2000, the date that the county changed the value of the property on the rolls and sent notifications to taxpayer. *See* ORS 311.223(4). Here the written notifications provided to taxpayer contained that information and warned taxpayer that it would forfeit its appeal rights if it did not act to file an appeal within 90 days. Taxpayer did not file its appeal in the Magistrate Division until October 19, 2001,

approximately eight months after the 90-day appeal period expired on February 12, 2001.

■      Although taxpayer acknowledges that it failed to meet the required deadline, it argues that it may benefit from a claim of equitable estoppel. In order to present a successful claim for estoppel, taxpayer must prove three elements: (1) misleading conduct on the part of the defendant(s); (2) taxpayer's good faith reliance on that conduct; and (3) injury to taxpayer. *Sayles v. Dept. of Rev.*, 13 OTR 324, 328 (1995). Here the dispute is centered on the first element, whether the department and/or the county misled taxpayer.

■      In order to show misleading conduct on the part of a defendant, a taxpayer must offer "proof positive" of that conduct. *Johnson v. Tax Commission*, 248 Or 460, 463-64, 435 P2d 302 (1967). In addition, this court has stated that " '[w]hen written materials containing accurate information and advice are given to taxpayers, taxpayers may not continue to rely on an understanding based on oral representations or discussions which are contrary to the written information.' " *Schellin v. Dept. of Rev.*, 15 OTR 126, 132 (2000) (quoting *Smith v. Dept. of Rev.*, 13 OTR 206, 210 (1994)). Here taxpayer received unequivocal and accurate written notifications regarding its appeal rights on November 14, 2000; therefore, the correct focus is on communications between the parties that happened thereafter. Taxpayer has offered a summary of the statements detailed above, which paint a general picture of ongoing negotiations after November 14, 2000, and before February 12, 2001. Those statements do not provide "proof positive" that the department or the county affirmatively and expressly told taxpayer to disregard the statutorily required 90-day appeal period during those negotiations. The court concludes, therefore, that this record does not contain evidence that the department or the county misled taxpayer in any way as to its requirement to appeal within 90 days of the November 14, 2000, notifications.

Taxpayer argues that communications that occurred after the 90-day period provide the required "proof positive." These post-February 12 statements are said to be consistent only with the conclusion that the matter was then still open.

The department contends, at least in part, that consideration of those conversations is precluded because taxpayer could not have relied on a communication that occurred after the time bar had run. To the extent that taxpayer presents evidence of conversations or communications that occurred after the statutory period and that relate to the current intentions of the parties, the department is correct. On the other hand, in the case of a later communication that provides evidence of misleading conduct that occurred during the statutory period, the court might, under the correct circumstances, consider that evidence.

In order to overcome the force of the written notifications of taxpayer's appeal rights and deadlines taxpayer must offer "proof positive" from a later period that either the department or the county misled taxpayer as to the statutory time bar within a time frame in which taxpayer's reliance was detrimental. Taxpayer highlights one communication from Simpson to Sweitzer and Vernon dated March 5, 2001, in which he indicates that a county employee told him that day that "this was not an appeal process and both sides are simply waiting for a decision from" the department. Taxpayer asserts that statement shows that the county did not view what was occurring between itself and taxpayer as "an appeal," the implication being that at least the county understood that taxpayer was not subject to the statutory deadline.

In the context of a motion for summary judgment, the court understands "proof positive" to create a more stringent proof requirement. Although taxpayer, the nonmoving party, is still permitted all reasonable inferences, those inferences must provide strong support for the conclusion that either or both defendants misled taxpayer as to the statutory appeal deadline. When viewed under that standard, at least two problems exist with taxpayer's post-deadline evidence. First, because the statements occurred after the February 12, 2001, statutory appeal deadline, they must evidence conduct on behalf of either defendant that predates the deadline. Simpson's March 5 statement merely establishes that *he* believed certain things to be true as of that date.

Second, even if Simpson's description to taxpayer's partners of the statement is accurate, the statement does not

necessarily contain an expression by either defendant that taxpayer was permitted to ignore the time bar that had been stated in the November 14, 2000, notifications. The statement could indicate a number of other things. For example, the county employee's statement might be an acknowledgment of an unfortunate truth: as of March 5, 2001, the parties no longer were in an appeal process because taxpayer had allowed the 90 days to run in which it is permitted to appeal. That statement might also reflect a view that the department could, in the exercise of its supervisory powers and its role in classifying centrally assessed property, alter the outcome of the county's action *apart* from any appeal process. Finally, the statement could simply reflect a mistake by the county employee. None of those hypothetical implications in any way neutralize the express written notice that taxpayer received. Moreover, none of those implications provide "proof positive" that either the department or the county misled taxpayer, before the appeal deadline, into foregoing its statutory appeal rights. As a result, taxpayer may not avail itself of a claim for equitable estoppel and its Complaint must be dismissed.

## V. CONCLUSION

Based on the foregoing reasons, the court concludes that Plaintiff's Complaint was not timely filed and Plaintiff has not presented proof of the level required to provide a basis for an estoppel claim; therefore, Plaintiff's Complaint must be dismissed. Now, therefore,

IT IS ORDERED that Plaintiff's Complaint is dismissed.

Costs to neither party.