DECISION
Plaintiff appeals tobacco taxes assessed on orders of other-tobacco-products (OTP) shipped to Mill City, Oregon from Yakima, Washington during the 1997 through 2004 tax years.
A trial was held on June 24, 2009, in Salem, Oregon. William L. Ghiorso, Attorney at Law, represented Plaintiff. William Downer, Judy Downer, and Vonda Porter appeared as witnesses for Plaintiff. Joseph A. Laronge, Senior Assistant Attorney General, Department of Justice, argued the cause for Defendant. Fred Nichol, auditor, testified as a witness for Defendant. Plaintiff submitted Exhibits 1-4. Defendant submitted Exhibits A, through F. All exhibits were received without objection. The record closed on August 5, 2009.
 I. STATEMENT OF FACTS
On July 25, 2005, the Department of Revenue (Defendant) issued to Plaintiff a Notice of Tax Assessment. (Def's Ex C at 1.) The notice assessed taxes on orders of OTP shipped to Plaintiff for sale at the Tobacco Leaf (the Business) from Lil Brown Smoke Shack (LBSS), an out-of-state supplier of OTP, during 1997 through 2004. (Def's Ex B at 1.)
At trial, Plaintiff testified that he used ten different suppliers of OTP during 1997 through 2004. In 1997, Plaintiff began placing orders for OTP with LBSS. (Def's Ex A at 326.) Orders of OTP were shipped from LBSS in Yakima, Washington to Plaintiff in Mill City, Oregon. *Page 2 
(Def's Ex A.) LBSS shipped OTP to the Business and to Plaintiffs personal residence. (Id.) Plaintiff sold OTP ordered from LBSS to consumers at the Business, and to two different parties who contracted to purchase the Business between May 2, 2000, and January 29, 2003.
Plaintiff operated the Business until 2000 when he attempted to sell it. Plaintiff entered into two different contracts to sell the Business between May 2, 2000, and January 29, 2003. (Ptf's Ex 2, 3.) Both of the sales were unsuccessful, and Plaintiff resumed operation of the Business again in 2003.
On May 2, 2000, Plaintiff entered into the first contract to sell the Business. (Ptf's Ex 2 at 1.) The first buyers (the 2000 buyers) began operating the Business in 2000. The 2000 buyers were unable to establish accounts with suppliers of OTP, and Plaintiff agreed to use his personal accounts with suppliers to order inventory for the Business. Under this arrangement, Plaintiff placed orders for OTP with suppliers, including LBSS, using his personal accounts. When the orders arrived in Mill City, Plaintiff paid the suppliers with his personal checks and the 2000 buyers paid Plaintiff as the inventory was sold to consumers. In December 2000, the 2000 buyers notified Plaintiff that they would no longer be able to purchase the Business.
On January 3, 2001, Plaintiff entered into a second contract to sell the Business. (Ptf's Ex 3 at 1.) The second buyer (the 2001 buyer) was also unable to establish accounts with suppliers of OTP. Between January 3, 2001, and January 29, 2003, Plaintiff ordered OTP for the Business using his personal accounts with suppliers, including LBSS. When the orders arrived in Mill City, Plaintiff sold OTP to the 2001 buyer. The 2001 buyer paid Plaintiff for the inventory on a weekly basis. In December 2002, the 2001 buyer died. *Page 3 
Plaintiff regained title to the Business on January 29, 2003. (Ptf's Ex 3 at 3.) Plaintiff operated the Business from January 29, 2003 until sometime in 2004. During that time, Plaintiff continued to order OTP from LBSS. (See, e.g., Def's Ex A at 357.) Later, the Oregon State Police obtained a search warrant and searched the Business. (Ptf's Am Compl at 4.) Materials seized during the search were used to prosecute Plaintiff in a criminal proceeding later that year. (Id.) Plaintiff was ordered to liquidate the Business as a result of the prosecution of the criminal case.
During 1997 through 2004, the Business was inspected by Defendant's agents. Agents inspected records kept by Plaintiff, including itemized invoices of OTP purchased for the Business. (Def's Ex E at 4.) At trial, Plaintiff testified that the Business was inspected weekly between 1997 and 1999, and every two to three months thereafter. Plaintiff did not provide copies of inspection reports or other documentation of those inspections.
Defendant contended that the frequency of the inspections was less often and submitted seven inspection reports into evidence. (Def's Ex E at 2, 4, 5, 7, 29, 39, 40.) Two of the reports submitted by Defendant do not relate to the tax years at issue in this appeal. (Def's Ex E at 39, 40.) Of the five reports that were issued during the tax years in question, three reports show that Defendant's agents inspected OTP records at the Business during the tax years in question and two reports show that only cigarette products were inspected. (Def's Ex E at 2, 4, 5, 7, 29.) The three inspection reports showing that agents inspected OTP invoices at the Business during the tax years in question indicate that invoices shipped from suppliers of OTP were inspected on August 12, 2003, March 18, 2004, and May 19, 2004. (Def's Ex E at 4, 7, 29.)
The OTP inspection forms provide spaces for the inspecting agent to list (1) the date the inspection was conducted; (2) the name, address, and owner of the business inspected; (3) the *Page 4 
name of the suppliers of the cigarette products that were inspected; and (4) the name of the suppliers of OTP whose invoices were inspected. (Def's Ex E at 2, 4, 5, 7, 29, 39, 40.) The inspection reports that Defendant has submitted as evidence show that agents inspected invoices shipped to the Business from several different suppliers of OTP (Willamette Valley, Dominican Cigars Direct, Costco, and Papeotrade). (Def's Ex E at 4, 7, 29.)
Defendant has also submitted more than 450 invoices for shipments of OTP made to Plaintiff from LBSS during 1997 through 2004. (Def's Ex A.) Nearly 315 of the invoices in the record contain a clear notice. (Def's Ex A at 32-205, 329-469.) The notice states: "All applicable state [and] local taxes are the responsibility of the purchaser. Federal taxes have been paid." (Defs Ex A at 32.)
Plaintiff contends that he acted as a retailer of OTP during the tax years in question. Because tobacco taxes are imposed on distributors, Plaintiff argues that he is not responsible for the taxes imposed on orders of untaxed OTP shipped from LBSS. Plaintiff also asserts three defenses to the Notices of Tax Assessment. (Ptf Am Compl at 4-5.) Plaintiff argues that he should not be responsible for paying state and local taxes associated with orders of OTP shipped from LBSS between May 2, 2000 and January 29, 2003, because he did not operate the Business during that time period. (Ptf's Am Compl at 5.) Plaintiff also argues that the assessments are unfair, because Defendant's agents inspected invoices for shipments of OTP shipped from LBSS to Plaintiff, but did not notify Plaintiff at the time of inspection that he was not in full compliance with all tobacco tax obligations. (Ptf's Am Compl at 4.) Finally, Plaintiff argues that he cannot establish a complete record of the assertions he makes in his Complaint because the Oregon State Police did not maintain (or return) the materials seized during the 2004 search of the Business upon request. (Ptf's Am Compl at 5.) Plaintiff contends that the seized reports *Page 5 
show that Defendant's agents inspected invoices shipped from LBSS and found that Plaintiff was in full compliance with all state and local tobacco tax obligations.
Defendant argues that Plaintiff is responsible for paying the taxes at issue in this case, because Plaintiff acted as a "distributor" of OTP. (Def's Closing Argument at 1.) Defendant argues that Plaintiff was not misled because inspection reports issued by Defendant did not indicate to Plaintiff whether or not he was in full compliance with all state and local tobacco tax obligations. Defendant asserts that there is no evidence that the agency inspected LBSS invoices during inspections of the Business.
 II. ANALYSIS
ORS 323.505 imposes state and local taxes on taxpayers who qualify as "distributors" of OTP.[1] ORS 323.505(1) states, in relevant part, that:
 "(1) A tax is hereby imposed upon the sale, storage, use, consumption, handling or distribution of all tobacco products in this state * * *. The tax shall be imposed on distributors at the time the distributor:
 (a) Brings, or causes to be brought, into this state from without the state tobacco products for sale, storage, use or consumption[.]"[2]
ORS 323.500(3) defines the term "distributor." ORS 323.500(3)(a) states:
 "Any person engaged in the business of selling tobacco products in this state who brings, or causes to be brought, into this state from without the state any tobacco products for sale[.]"
The terms "business" and "sale" are defined in ORS 323.500(1) and (7) respectively:
 "(1) `Business' means any trade, occupation, activity or enterprise engaged in for the purpose of selling or distributing tobacco products in this state."
 "(7) `Sale' means any transfer, exchange or barter, in any manner or by any *Page 6 
means whatsoever, for a consideration, and includes and means all sales made by any person[.]"
ORS 323.500(7) requires that transfers of OTP be made "for a consideration." To determine whether the transfers of OTP from Plaintiff to the 2000 buyers, the 2001 buyers, and consumers at the Business were made for a "consideration," the court looks to the text and context of ORS 323.500. PGE v. Bureau of Labor and Industries (PGE), 317 Or 606, 610,859 P2d 1143 (1993). Words of common usage are given their "plain, natural, and ordinary meaning." Id. at 611. However, where words used in a statute have a well-defined legal meaning they will be given that meaning. Wal-Mart Stores, Inc. v. City of Central Point, 341 Or 393, 397,144 P3d 914 (2006) (citing Gaston v. Parsons, 318 Or 247, 253, 864 P2d 1319
(1994)).
The legal term "consideration" refers to the bargain between two parties. It is the reason that causes a contracting party to enter into a contract. Black's Law Dictionary defines "consideration" as:
 "Something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promise; that which motivates a person to do something, esp. to engage in a legal act."
Black's Law Dictionary 324 (8th ed 2004).
During the tax years at issue, Plaintiff ordered OTP from LBSS using his personal accounts, which brought tobacco products into Oregon from Washington for sale to the 2000 buyer, the 2001 buyer, and consumers at the Business. Between May 2, 2000, and January 29, 2003, when Plaintiff did not personally operate the Business, he continued to order OTP from LBSS. Plaintiff then sold OTP to the 2000 buyers and 2001 buyer. The 2000 buyers paid Plaintiff as OTP was sold to consumers and the 2001 buyer paid Plaintiff for OTP in weekly installments. LBSS was located in Yakima, Washington, and shipped OTP to Plaintiff in Mill *Page 7 
City, Oregon. Plaintiff acted as a "distributor" of OTP as defined by ORS 323.500(3)(a). Therefore, under ORS 323.505(1)(a), he became responsible for the state and local tobacco taxes associated with OTP shipped from LBSS to Plaintiff during 1997 through 2004 at the time that the OTP was brought into this state.
Plaintiff seeks to avoid liability for the taxes at issue in this case by alleging estoppel. Plaintiff argues that Defendant misled him and that, as a result, the assessments are unfair. "In order to present a successful claim for estoppel, [a] taxpayer must prove three elements: (1) misleading conduct on the part of the defendant(s); (2) taxpayer's good faith, reliance on that conduct; and (3) injury to taxpayer." HoytStreet Properties LLC v. Dept. of Rev. (Hoyt Street Properties),18 OTR 313, 318 (2005).
Taxpayers claiming estoppel must show that they had a right to rely, and reasonably relied on the representation of the estopped party. Welchv. Washington County, 314 Or 707, 717, 842 P2d 793 (1992). "A representation can take the form of an affirmative statement or action, or, under some circumstances, of a misleading silence." Coos County v.State of Oregon, 303 Or 173, 181, 734 P2d 1348 (1987). However, silence will create estoppel only where there is a legal duty to speak. Id. at 189.
The Oregon Legislature has authorized Defendant to inspect taxpayer records and determine the amount of taxes owed under the Tobacco Products Tax Act in ORS 314.425 and ORS 323.600.[3] ORS 314.425(1) states, in relevant part, that:
 "The Department of Revenue, for the purpose of ascertaining the correctness of any return or for the purpose of making an estimate of the taxable income of any taxpayer, may examine or cause to be examined * * * any books, papers, records or memoranda bearing upon the matter * * * ." *Page 8 
ORS 323.600 states, in relevant part, that:
 "If * * * the Department of Revenue is not satisfied with the return of the tax or as to the amount of tax required to be paid to this state by any person, it may compute and determine the amount required to be paid upon the basis of the facts contained in the return or upon the basis of any information within its possession or that may come into its possession.* * * Notices of deficiency shall be given and interest on deficiencies shall be computed as provided in ORS 305.265."
The purpose of both ORS 314.425(1) and ORS 323.600 is to ensure that all state and local tobacco taxes have been assessed and collected. ORS323.600 permits, but does not require, Defendant to inspect taxpayer records. Neither ORS 314.425 nor ORS 323.600 impose a duty on the department to notify taxpayers whether or not they are in full compliance with state and local tax obligations before issuing a notice of deficiency.
Under Plaintiffs interpretation of ORS 323.600, Defendant would be required to perform a complete audit of the records of retailers and distributors of OTP during the inspection to avoid impliedly consenting to violations of tobacco tax obligations. Such a requirement would negate the need for the return requirement found in ORS 323.510(2). Defendant did not have a duty to inform Plaintiff whether or not he was in full compliance with all tobacco tax obligations at the time of inspection.
To show that a defendant engaged in misleading conduct, "a taxpayer must offer `proof positive' of that conduct." Hoyt Street Properties,18 OTR at 318 (citing Johnson v. Tax Commission, 248 Or 460, 463-64,435 P2d 302 (1967)). Here, none of the inspection reports in the record indicate that LBSS invoices were reviewed; no other documents were submitted as evidence of the alleged representations made by Defendant. Defendant had no duty to inform Plaintiff of potential violations during the inspections. As a result, Defendant's silence as to the LBSS invoices at the time of the inspection does not demonstrate estoppel. Plaintiff has provided no evidence of affirmative statements or actions that Plaintiff relied upon. As such, *Page 9 
Plaintiffs claim for estoppel fails. Plaintiff asserts spoliation of evidence as an affirmative defense to his tobacco tax obligations. However, the court does not find Plaintiffs spoliation of evidence argument persuasive based on Defendant's direct actions and the record produced by the parties.
 III. CONCLUSION
It is undisputed that Plaintiff purchased OTP from an out-of-state supplier for sale in Oregon. Plaintiff sold OTP ordered from LBSS to consumers at the Business during 1997 through May 2, 2000, and from January 29, 2003, through June 2004. Plaintiff continued to order OTP from LBSS between May 2, 2000 and January 29, 2003. Plaintiff then sold OTP to the 2000 buyers and the 2001 buyer. During the tax years at issue, Plaintiff qualified as a distributor of OTP and was therefore responsible for all Oregon taxes not paid on OTP he purchased for sale in Oregon. Now, therefore,
IT IS THE DECISION OF THIS COURT that the appeal is denied.
Dated this _____ day of March 2010.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This Decision was signed by Magistrate Jeffrey S. Mattson on March 17,2010.
 The court filed and entered the Decision on March 17, 2010.
[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1997.
[2] ORS 323.505(1) was amended in 2003. Or Laws 2003, ch 804, §§ 31, 32. The amendment removed certain language from the above-cited portion of ORS 323.505(1) and re-incorporated that language into the definitional statute, ORS 323.500. Id. Thus, the amendment does not affect the outcome of this Decision.
[3] ORS 323.645 states "ORS 323.500 to ORS 323.640 may be cited as the Tobacco Products Tax Act. *Page 1