IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| CROSSRIDGE CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 190336N |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON COUNTY ASSESSOR, | ) | |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| Defendant. | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **AND DENYING PLAINTIFF'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |

This matter came before the court on the parties' cross-motions for summary judgment. The parties filed stipulated facts on March 9, 2020; cross-motions on April 17, 2020; and responses on May 1, 2020. Oral argument was held by telephone on May 19, 2020. William E. Smith, an Oregon attorney, appeared on behalf of Plaintiff. Jason Bush, Assistant County Counsel II, appeared on behalf of Defendant. This matter is now ready for the court's determination.

## I. STATEMENT OF FACTS

Plaintiff Crossridge Church was formed on October 4, 2012, as the result of a merger of Rock Harbor Church (Rock Harbor) and Sherwood Baptist Church (Sherwood Baptist). (Stip Facts at 1-2, ¶ 1, 3.) The congregations and individual assets of Rock Harbor and Sherwood Baptist joined to form Plaintiff, but the merger did not meet the formal requirements of ORS 65.484. (*Id.* at 1, ¶ 1.) Rock Harbor and Sherwood Baptist dissolved on October 4, 2012, and May 31, 2013, respectively. (*Id.* at 1-2, ¶ 3.) The parties clarified during oral argument that Account R557882 (the subject property) was transferred from Sherwood Baptist to Plaintiff in 2013 by a deed that was properly recorded with the county. (*See also id*. at 1, ¶ 2 (characterizing transfer as name change).)

Defendant did not discover the change in ownership of the subject property until 2017. (Stip Facts at 1, ¶ 2; Ex A.)  Defendant determined that the change in ownership that resulted from the 2013 merger disqualified the subject property from exemption.  (Def's Mot Summ J at 2.)  On December 29, 2017, Defendant issued a letter to Plaintiff explaining its intention to return the subject property to the tax roll for the 2018-19 tax year unless a timely application for exemption was filed.  (Stip Facts, Ex A at 2.)  In its letter, Defendant asserted that the previous tax exemption of the subject property granted to Sherwood Baptist should have been removed when the property was transferred to Plaintiff on October 4, 2013.  (*Id*.)  Defendant's letter included a link to the exemption application forms and advised Plaintiff of the April 1, 2018, application deadline and the December 31, 2018, late application deadline.  (*Id.*)  Defendant also sent a letter notifying Sherwood Baptist of the termination of its tax exemption for the subject property and informed Sherwood Baptist of its own right to appeal Defendant's decision.  (Stip Facts at 2, ¶ 7; Ex A at 1.)  No evidence was presented indicating that an appeal was taken from Defendant's decision to disqualify the subject property from exemption.

Plaintiff did not file an application for property tax exemption for the 2018-19 tax year by the April 1, 2018, deadline.  (Stip Facts at 2, ¶ 8.)  Plaintiff also failed to timely apply for exemption with a late filing fee by the December 31, 2018, deadline.  (Def's Mot Summ J at 3.)  Consequently, Defendant returned the subject property to the tax roll for the 2018-19 tax year and issued a tax bill for $14,298.69.  (Stip Facts at 2, ¶ 9; Ex B.)  Plaintiff did not take an appeal from the property tax statement issued for the 2018-19 tax year.  (Def's Mot Summ J at 3.)

Plaintiff applied for exemption for the 2018-19 and 2019-20 tax years on March 26, 2019.  (Stip Facts at 2, ¶ 10; Ex C.)  On August 13, 2019, Defendant informed Plaintiff by letter that the subject property would be exempt from property taxation for the 2019-20 tax year, but

not for the 2018-19 tax year.  (Stip Facts at 3, ¶ 11; Ex D.)  Plaintiff appeals Defendant's denial of its 2018-19 property tax exemption application.

## II.  ANALYSIS

Plaintiff claims exemption under ORS 307.140.[1]  Plaintiff's status as a religious organization entitled to exemption under that statute is not at issue.  Rather, the issue is whether the subject property qualifies for property tax exemption for the 2018-19 tax year despite Plaintiff's failure to timely file its application under ORS 307.162.

Defendant maintains that, because Plaintiff failed to timely apply for exemption, the subject property is not exempt from taxation for the 2018-19 tax year.  (Def's Mot Summ J at 4.)  Plaintiff raises two challenges in response to Defendant's position.  First, Plaintiff argues that the prior tax-exempt status of the subject property transferred upon merger of Sherwood Baptist and Rock Harbor; therefore, Plaintiff was not required to apply for exemption.  (Ptf's Mot Summ J at 5.)  Alternatively, if a new application was required, Plaintiff argues that its late application for the 2018-19 tax year qualifies for the "good and sufficient cause" exception in ORS 307.162(2)(a)(B).  (Ptf's Mot Summ J at 3.)

Tax Court Rule (TCR) 47 C states that summary judgment shall be entered if "the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law."  Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence.  ORS 305.427.  A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).  "[I]f

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [its] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 OTR 260, 265 (1990).

A.      *Whether Exemption Application Required for the 2018-19 Tax Year*

Qualifying property of religious organizations is entitled to exemption from property taxation under ORS 307.140. However, exemption is not automatic and even when exemption is permitted, it is available "only in accordance with specified conditions." *Erickson v. Dept. of Rev.*, 17 OTR 324, 328 (2004). ORS 307.140 provides that property of religious organizations may be exempt only "[u]pon compliance with ORS 307.162." Under ORS 307.162(1)(a), the organization seeking exemption "must file a claim with the county assessor, on or before April 1 preceding the tax year for which the exemption is claimed." A "tax year" is defined as "a period of 12 months beginning on July 1." ORS 308.007(1)(c).

As long as ownership of all property included in the claim filed with the county assessor for a prior year remains unchanged, an organization previously approved for property tax exemption need not renew its application annually. ORS 307.162(1)(b). By implication, a new application for exemption is required under ORS 307.162(1)(b) if ownership of the property changes. *Genesis Community Fellowship v. Multnomah County Assessor*, TC-MD 110934C, 2012 WL 92904 at *1 (Or Tax M Div Jan 12, 2012). Ownership is defined as "legal and equitable title." ORS 307.162(4)(c). Thus, a change in either legal or equitable title triggers a requirement to file a new application for exemption.

Plaintiff contends that "there was never any transfer of the property from [one] entity to another that would change the status of the property" such that a new application for exemption was required. (Ptf's Mot Summ J at 5.) To support its theory, Plaintiff suggests that it is only the "current iteration" of Sherwood Baptist, a tax-exempt organization, and that the merger was

"more akin to a name change or rebranding" because no gift or sale occurred.[2] (Ptf's Mot Summ J at 5.) Plaintiff assumed that because there was no sale or change in the use of the subject property as a church it would continue to qualify for exemption. (Ptf's Mot Summ J at 5.) But that assumption was mistaken. The statute's definition of "ownership" includes both legal and equitable title. A transfer of legal title occurs where the grantor conveys its interest in the property by a signed, recorded deed. *Burke v. State ex rel Department of Land Conservation and Development,* 352 Or 428, 443-444, 280 P3d 790 (2012) (distinguishing transfer of legal title by deed from transfers of other nonpossessory interests such as mortgages and easements). The parties stipulated that legal title to the subject property was transferred to Plaintiff in 2013. The court finds that a change in ownership occurred within the meaning of ORS 307.162, triggering the need for a new application for exemption.

Having concluded that Plaintiff was required to file a new application for exemption, the court now turns to whether Plaintiff satisfied the application requirements under ORS 307.162. The tax year at issue is 2018-19, which began on July 1, 2018. To meet the requirements set in ORS 307.162(1), Plaintiff's application for exemption must have been filed on or before April 1, 2018. Alternatively, Plaintiff could have submitted a late application by December 31, 2018, if accompanied by a late filing fee. ORS 307.162(2)(a)(A). Plaintiff did not meet either deadline. The court turns to Plaintiff's final available route to relief.

B.     *Whether Good and Sufficient Cause Exists for the 2018-19 Tax Year*

Plaintiff's final available route to relief is outlined in ORS 307.162(2)(a)(B), which allows a taxpayer to file their exemption claim on or before April 1 of the tax year if the taxpayer

---

[2] The parties agree that the merger did not meet the formal requirements under ORS 65.484. However, because the court finds that a change in ownership occurred, whether or not the merger met the formal requirements is not relevant.

is able to demonstrate "good and sufficient cause" for failing to file a timely claim and pays a $200 late filing fee.[3]

Good and sufficient cause means "an extraordinary circumstance beyond the control of the taxpayer or the taxpayer's agent or representative that causes the failure to file a timely claim." ORS 307.162(4)(b)(A). The exception is a narrow one. To meet the standard "a taxpayer needs to show not only that some circumstance occurred, but also that its occurrence caused [the] failure." *Karamanos Holdings Inc. v. Multnomah County Assessor*, 21 OTR 198, 202 (2013) (internal quotations omitted). Moreover, the statute explicitly cautions the taxpayer that "hardship, reliance on misleading information unless the information is provided by an authorized tax official in the course of the official's duties, lack of knowledge, oversight, [and] inadvertence" do not constitute good and sufficient cause. ORS 307.162(4)(b)(B).

Guided by that framework, the court now turns to whether Plaintiff established good and sufficient cause for its failure to timely file for exemption for the 2018-19 tax year. Plaintiff articulates several causes for its failure to timely file: (1) its reliance on the continuation of property tax exemption for the 2013-14 through 2017-18 tax years; (2) its busy 2018 holiday season; and (3) its internal confusion about administrative duties. The court addresses each of those arguments in turn.

1.      *Plaintiff's Reliance on Presumed Continuation of Exemption*

Plaintiff argues that good and sufficient cause exists for its failure to timely file its application for property tax exemption because Defendant failed to discover the change in ownership of the subject property until 2017. (Ptf's Mot Summ J at 4.) In Plaintiff's view, this

---

[3] Other avenues of relief are available but not applicable here. (*E.g.*, first-time filer exception under ORS 307.162(2)(a)(B) for filer who did not receive notice "before December 1 of the tax year" of the potential additional tax liability.)

"is certainly an 'extraordinary circumstance beyond the control of the taxpayer.'" (*Id.*) Plaintiff's reliance on this argument is misplaced. Defendant denied Plaintiff's application for exemption for 2018-19 because it found Plaintiff's failure to timely file was due to a "lack of knowledge and inadvertence." (*Id., Ex D at 1.*) The court agrees.

Defendant's delay in discovering the change in ownership may be "beyond [Plaintiff's] control" but it did not *cause* Plaintiff's failure to timely file for exemption. (Ptf's Resp at 2.) Plaintiff received clear and correct instructions for how to apply for exemption for the 2018-19 tax year in Defendant's December 29, 2017, letter. Joel White (White), Senior Pastor during the relevant year, admitted that he understood Plaintiff to be "a tax-exempt entity and did not receive any paperwork or notice from the county *to the contrary until* December 2017." (Ptf's Mot Summ J, Ex G at 1-2 (emphasis added).) White stated that he "did not respond to the December 2017 paperwork because [he] believed [Plaintiff] to be exempt * * *." (*Id*. at 2.)

Despite Plaintiff's belief that the subject property continued to be exempt from taxation, Plaintiff received a clear written notice to the contrary from Defendant. "[W]hen written materials are given to taxpayers containing accurate information and advice, taxpayers may not continue to rely on an understanding [that is] contrary to the written information." *Smith v. Dept. of Rev.*, 13 OTR 206, 210 (1994). Defendant's conduct in failing to recognize the change in ownership between 2013 and 2017 cannot reasonably be considered to "neutralize the express written notice [Plaintiff] received." *Hoyt Street Properties v. Dept. of Rev.*, 18 OTR 313, 320 (2005). Taken with the fact that each tax year stands alone, any action or inaction between 2013 and 2017 is of no consequence in deciding whether Plaintiff timely filed for exemption for 2018-19. *See Safley v. Jackson County Assessor*, TC-MD 091206C, 2010 WL 4923355 at *5 (Or Tax M Div Dec 2, 2010) (noting that each tax year is its own claim).

The precise language of ORS 307.162(2)(a)(B) mandates that "the claimant demonstrates good and sufficient cause" for failing to timely file. Here, there is no evidence that Plaintiff had good and sufficient cause for failing to timely file for exemption; to the contrary, Plaintiff's evidence merely establishes what Plaintiff believed to be true despite the "unequivocal and accurate written notifications" it received. *Hoyt*, 18 OTR at 318.

Defendant's decision to disqualify the subject property from exemption made the property subject to taxation as of July 1, 2018. That holds true even if Defendant did not notify Plaintiff of the disqualification until after July 1, 2018, because Defendant is permitted to alter position as to exemption without notice to the property owner prior to the issuance of the tax statement. *See Multnomah County Assessor v. Portland Devel. Comm'n.*, 20 OTR 395, 398 (2011). Both the December 29, 2017, letter and the tax statement contained accurate information and advice. After receiving those documents, Plaintiff could no longer "reasonabl[y] assume[ ]" that "these issues were addressed within the first year and a half of [its] existence" because that understanding was contrary to the written information in Defendant's letter and tax statement. (Ptf's Mot Summ J, Ex H at 1.)

Plaintiff attempts to bolster its argument by noting that Defendant "fail[ed] to take into consideration its own inadvertence and oversight" when it denied Plaintiff's application for exemption. (Ptf's Mot Summ J at 4.) According to Plaintiff, "[t]he oversight or inadvertence in this matter is that of [Defendant] *to a far greater degree* [than] any of that of [Plaintiff]." (Ptf's Resp at 2 (emphasis added).) As discussed above, Defendant conduct is only relevant to the extent that it caused Plaintiff to reasonably rely on misleading information. *See* ORS 307.162(4)(b)(B); *see also Hewlett-Packard Co. v. Dept. of Rev.*, 13 OTR 247, 251 (1995) (rejecting taxpayer's argument for good and sufficient cause where agent's unawareness of the

deadlines caused failure to file even where circumstances might otherwise have qualified as extraordinary). Even if Defendant did exhibit inadvertence and oversight in failing to discover the change in ownership, Plaintiff has not established a causal connection between Defendant's conduct and its own. *See* ORS 307.162(4)(b)(A).

2. *Plaintiff's Busy 2018 Holiday Season*

In its written arguments, Plaintiff's attempt to establish good and sufficient cause rests solely on Defendant's failure to discover the change in ownership of the subject property. (Ptf's Mot Summ J at 4; Ptf's Resp at 2.) However, Plaintiff's exhibits suggest another possible reason for its failure to timely file: the busy holiday season at the end of 2018. (Ptf's Mot Summ J, Ex H.)

In Plaintiff's "Statement of Good and Sufficient Cause" submitted with its application for exemption, Plaintiff explains that "October through the first of the year is [its] busiest time of year for the staff and leaders" especially "[w]ith the holidays quickly approaching." (Ptf's Mot Summ J, Ex H.) However, Plaintiff became aware of the need for a new exemption application when it received Defendant's December 29, 2017, letter. A busy time of year is not an extraordinary circumstance within the meaning of ORS 307.162(4)(b)(B). Plaintiff also did not explain why it could not have devoted the time and resources to completing the application before the April 1 late filing deadline. *Carver School v. Clackamas County Assessor*, TC-MD 130522N, 2014 WL 2488112 at *3 (Or Tax M Div Jun 2, 2014).

3. *Plaintiff's Internal Confusion About Administrative Duties*

Plaintiff also notes that "there was a great deal of confusion as to the roles in administrating the church." (Ptf's Mot Summ J, Ex H.) This court acknowledges that, "[a]s a group, exempt corporations are notorious for their failures to protect their tax advantages" in part

due to frequent turnover of officeholders and managers who often are not business-oriented. *Renewal House, Inc. v. Dept. of Rev.*, 5 OTR 638, 643 (1974). Nevertheless, hardship and oversight are explicitly excluded from the definition of good and sufficient case; the responsibility remains with the taxpayer to meet the minimum requirements of ORS 307.162. *Id.* at 644.

The court concludes that the subject property does not qualify for property tax exemption for the 2018-19 tax year. The court understands that its decision in this case imposes a substantial burden on Plaintiff. As this court has previously observed, despite "the good things exempt organizations do, their encounters with the property tax system have often been difficult and have produced seemingly harsh results." *Erickson*, 17 OTR at 327. Plaintiff may find this outcome to be harsh, but the court is bound to apply the law as it is written and "cannot make determinations that might seem to some people as appropriate, equitable, or fair * * *." *Genesis Community Fellowship*, 2012 WL 92904 at *2.

### III. CONCLUSION

After careful consideration, the court concludes that an exemption application was required because the subject property's legal title changed in 2013 resulting in a change of ownership within the meaning of ORS 307.162. Plaintiff's application for the 2018-19 tax year was not timely filed and Plaintiff failed to demonstrate good and sufficient cause for its untimely filing. As a result, the court upholds Defendant's denial of Plaintiff's exemption application for the 2018-19 tax year. Now, therefore,

/ / /

/ / /

/ / /

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

Dated this ___ day of July 2020.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

***This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved.  See TCR-MD 19.***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on July 23, 2020.***