I. INTRODUCTION
This case comes before the court for decision after trial.
 II. FACTS
Plaintiffs (taxpayers) did not file their 1998 personal income tax return with Defendant (the department) before April 15, 2002. Had they done so, they would have been eligible to receive the refund they claimed on that return. ORS314.415(1)(b)(A).[1] Instead, the department did not receive taxpayers' return until September 30, 2004. Accordingly, the department denied taxpayers a refund. See DeArmond v. Dept.of Rev., 14 OTR 112, 118 (1997) (where taxpayers' return "was filed after the three-year period allowed for claiming a refund * * * the department properly denied the refund").
Plaintiff Larry Wright (Wright) testified that taxpayers mailed the return to the department on August 1, 2001, at the same time they mailed their 1998 federal income tax return to the Internal Revenue Service (IRS). Corroborating that claim are two pieces of evidence: a letter from the IRS stating that it received taxpayers' federal return on August 3, 2001, and notations on taxpayers' state and federal returns stating: "Mailed 8/1/01." Because the department did *Page 31 
not receive taxpayers' state return in August 2001, when the IRS received their federal return, taxpayers believed that their state return must have been lost in the mail.
ORS 305.820 provides a solution for instances in which a taxpayer's return has been lost in the mail. That statute provides:
 "(1) Any writing or remittance required by law to be filed with or made to the Department of Revenue * * * (designated in this section as the `addressee') which is:
 "* * * * *
 "(c) Lost in transmission through the United States mail or private express carrier, shall be deemed filed and received on the date it was mailed or deposited for transmittal if the sender:
 "(A) Can establish by competent evidence satisfactory to the addressee that the writing or remittance was deposited on or before the date due for filing in the United States mail, or with a private express carrier, and addressed correctly to the addressee; and
 "(B) Files with the addressee a duplicate of the lost writing or remittance within 30 days after written notification is given by the addressee of its failure to receive such writing or remittance."
Taxpayers sought to establish to the department's satisfaction that their return was lost in the mail by offering the two pieces of evidence described above. However, the department found that evidence unsatisfactory. Taxpayers appealed to the Magistrate Division of this court, which ruled in favor of the department. This appeal ensued.
In the Regular Division, taxpayers raise an additional claim: that the department is estopped from denying them a refund because it promised them that it would consider their return lost in the mail if they filed their state return with the department and if they provided proof that the IRS received their federal return in August 2001. The department denies that claim, arguing that it made no such promise, and that taxpayers have not proven all the elements of estoppel. Pertinent to the estoppel claim is a letter that taxpayers wrote to the department in December 2004. In that *Page 32 
letter, taxpayers stated that department employees had told them in spring 2004 that if they filed the 1998 return, "things could be straightened out." The letter also indicated that a department employee had told taxpayers in fall 2004 that "more probably than not, [taxpayers] had mailed the return." Finally, the letter indicated that a supervisor at the department had told them that, although he could do nothing for taxpayers, his supervisor "may be able to and if [taxpayers] could show that [their] Federal return was filed, that that may end the problem."
 III. ISSUES
1. Are taxpayers entitled to a determination under ORS 305.820
that their return was lost in the mail?
2. Is the department estopped from denying taxpayers a refund?
 IV. ANALYSIS
A. ORS 305.820
1. The department's determination under ORS 305.820(1)(c)(A) as to evidence of loss in the mail is reviewed for abuse of discretion. Egusa v. Dept. of Rev., 13 OTR 1 (1994).[2]
The department has adopted an administrative rule regarding the kinds of evidence it will consider in making its determination. OAR 150-305.820(2)(b)[3] provides that the department will consider the following kinds of evidence: *Page 33 
 "(A) A history of timely filing returns with the department;
 "(B) Proof of timely filed federal returns;
 "(C) Written documentation from the taxpayer which would indicate that taxpayer had timely filed. Such documentation may include correspondence to the department about refunds not received, or about checks for payment of tax which remain uncashed."
2. Here, taxpayers provided no evidence of a history of timely filing returns with the department and no proof of timely filed federal returns.[4] On the contrary, the letter from the IRS stating that it received taxpayers' federal return on August 3, 2001, long after the latest date for the timely filing of a 1998 return (October 15, 1999), shows that taxpayers did not timely file that return with the IRS. Additionally, although both the letter and the notations on taxpayers' returns corroborate taxpayers' version of events, neither is the kind of documentation described in OAR 150-305.820(2)(b)(C), and taxpayers submitted no proof of the date of mailing, such as a return receipt or certified mail receipt.
3. Beyond OAR 150-305.820(2)(b), the letter and the notation provide only circumstantial evidence of the truth of taxpayers' testimony. Those documents do not foreclose the department from reasonably concluding that, although taxpayers mailed their federal return on August 1, 2001, they forgot or otherwise failed to mail their state return on that day. The department also reasonably could conclude that the notation on taxpayers' state return was not made in 2001 (as *Page 34 
the notation on the federal return must have been), but rather just before it was sent to the department in 2004 in an attempt to bolster taxpayers' case.[5] Because both versions of events are reasonably plausible, and because taxpayers have not presented the kinds of evidence described in OAR 150-305.820(2)(b), the court cannot hold that the department "acted capriciously or arrived at a conclusion which was clearly wrong." Eyler v. Dept. of Rev., 14 OTR 160, 162 (1997) (quotingResolution Trust Corp. v. Dept. of Rev., 13 OTR 276, 279
(1995)) (internal quotation marks omitted).
B. Estoppel
4, 5. The elements of estoppel, as applied to taxing authorities, are: "(1) misleading conduct on the part of the department; (2) taxpayer's good faith, reasonable reliance on that conduct; and (3) injury to taxpayer." Webb v. Dept. ofRev., 18 OTR 381, 383 (2005).[6] Regarding the first element, taxpayers *Page 35 
must provide "proof positive" that the department misled them.Id. at 384.
6. Here, taxpayers rely solely on the oral representations of department employees to establish "proof positive" that the department misled them. This court has warned taxpayers before about the difficulties of establishing "proof positive" based solely on that kind of evidence. See id. at 384; Schellin v.Dept. of Rev., 15 OTR 126, 131 (2000) ("Mere testimony that the government orally misguided taxpayer, is generally, by itself, insufficient to show `proof positive' that the taxpayer was misled."). That difficulty is increased where, as here, taxpayers' evidence is vague and inconsistent.
On the one hand, Wright testified that department employees had told him that taxpayers' return would be considered lost in the mail, and that taxpayers would receive a refund on their 1998 return, if they provided the department with their 1998 return and proof that the IRS had received their federal return in August 2001. On the other hand, taxpayers' December 2004 letter to the department, written at a time closer to the actual conversations, and thus more indicative of their true content, shows that the statements of the department employees were far more vague and noncommittal. For instance, the letter describes one agent's statements as indicating only that taxpayers' provision of the above mentioned documents "may end the problem," not that it would actually do so. Reliance on such a noncommittal statement would not be reasonable. Moreover, the meaning of that statement, like the one to the effect that "things could be straightened out," is ambiguous: did ending the problem or straightening things out mean granting taxpayers a refund, or something else? The court has no help in answering that question except Wright's testimony as to his recollection of the phone conversations. Although the court finds Wright a generally credible witness, the strength of his testimony is *Page 36 
undermined by the vague, contradictory recollections contained in taxpayers' December 2004 letter.
Accordingly, taxpayers' evidence does not constitute "proof positive" that the department misled taxpayers into believing that if they provided the mentioned documents, then they would get a refund on their 1998 return. See Hoyt Street PropertiesLLC v. Dept. of Rev., 18 OTR 313, 319 (2005) (describing "proof positive" as a "stringent proof requirement" of "strong support" that the taxing authority misled the taxpayer).[7] The court therefore holds that taxpayers have failed to establish the necessary elements of estoppel.
 V. CONCLUSION
The court concludes that the department did not abuse its discretion under ORS 305.820(1)(c)(A) in finding unsatisfactory taxpayers' evidence that their 1998 return was lost in the mail. The court also concludes that the department is not estopped from denying taxpayers a refund. Now, therefore,
IT IS DECIDED that taxpayers are not due a refund on their 1998 personal income tax return.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2003 edition.
[2] The department argues that taxpayers also failed to meet the requirements of ORS 305.820(1)(c)(B). Michael Hamilton, an auditor with the department, testified that the department had sent taxpayers a Notice of Refund Adjustment for the 1999 tax year on September 16, 2003, and that the notice would have reflected that the department had not granted taxpayers a refund for tax year 1998, which would have constituted notice that the department had not received taxpayers' 1998 return. The department notes that taxpayers did not file their 1998 return within 30 days of September 16, 2003, but rather waited until September 30, 2004, to file the return. The court need not address whether the notice, which is not in evidence, constituted the "written notification" described by ORS 305.820(1)(c)(B), because the court finds that taxpayers failed to meet the requirements of ORS 305.820(1)(c)(A).
[3] All references to the Oregon Administrative Rules (OAR) are to the current edition. See Wilsonville Heights Assoc., Ltd. v.Dept. of Rev., 339 Or 462, 470 n 8, 122 P3d 499 (2005) (referring to the current edition of the OAR based on OAR 150-305.100-(B)).
[4] Wright testified that taxpayers filed their state returns from all other tax years either on time or within the three-year period for obtaining a refund on a return. More specifically, Wright testified that in the last ten years most of taxpayers' returns were filed late but within the three-year refund period. That testimony, taxpayers argue, corroborates their claim that they filed their 1998 return within the three-year refund period. However, the evidence does not show that taxpayers have a history of timely filing their returns by the original due date, even including permitted extensions, as contemplated in OAR 150-305.820(2)(b)(A). Moreover, although the evidence shows that taxpayers have a history of filing within the three-year refund period, that evidence is not conclusive as to the 1998 tax year, and the department reasonably could conclude that 1998 was an unusual year for taxpayers in that they forgot or otherwise failed to file their 1998 return within the three-year refund period.
[5] In that regard, the court does not seek to impugn taxpayers' character or motives, but only to illustrate that the evidence is susceptible to multiple reasonable interpretations, some of which favor taxpayers and some of which do not. So long as the department's determinations fit within that range of reasonable interpretations, it cannot be said to have abused its discretion.
[6] The department notes that the Supreme Court last described the elements of estoppel in the taxation context as:
 "There must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it."
Welch v. Washington County, 314 Or 707, 715, 842 P2d 793 (1992) (internal punctuation and quotation marks omitted).
In Webb, this court noted that the Supreme Court had abandoned the fourth prong of the Welch test in earlier tax estoppel cases such as Johnson v. Tax Commission, 248 Or 460,435 P2d 302 (1967). 18 OTR at 383 n 2. Because Welch came afterJohnson, the question arises whether this court was correct in describing that prong as no longer an element of estoppel. In answer, the court clarifies its position in Webb.
Intent to induce reliance need not be considered an independent element of estoppel, despite Welch, because, ultimately, that prong is part and parcel of the first and second prongs of the test as stated in Webb, that is, where there is not some form of intent to induce reliance, or, stated differently, where a party engaging in misleading conduct has no reason to know that another party might rely on that conduct, then there will be either no misleading conduct or no good faith, reasonable reliance on the conduct.
Similarly, the other prongs of the Welch test are also subsumed in the Webb test. The first and second prongs of theWelch test merely describe what is necessary for the first prong of the Webb test to be met, and the third and fifth prongs of the Welch test are necessary parts of the second prong of the Webb test in that, without them, there would be no good faith, reasonable reliance. In short, the requirements of estoppel are the same whether the test is described using the three elements of Webb or the five elements of Welch. Indeed, numerous formulations have been used by courts to describe estoppel. This court finds the Webb formulation preferable because it better describes the focus of the inquiry undertaken by this and the Supreme Court in estoppel cases involving taxing authorities.
[7] Additionally, the statements of department agents indicating that they felt that "more probably than not" taxpayers had mailed their returns, when understood in context, constitute nothing more than the opinions of persons who had no actual or apparent authority over taxpayers' case. As such, they could not be the basis of an estoppel claim, Welch, 314 Or at 717-18, even if they were less qualified and noncommittal than they are. *Page 37