I. INTRODUCTION
This matter comes before the court for decision after trial. Previously, the court denied a motion to dismiss brought by Defendant (the department). Webb v. Dept. of Rev., 18 OTR 381
(2005).
 II. FACTS
Plaintiff (taxpayer) did not file her state personal income tax return for tax year 2000 before April 15, 2004. Instead, the department received taxpayer's 2000 return on July 26, 2004. Accordingly, the department denied the refund claim she made on that return. See ORS 314.415(1)(b)(A) ("[N]or shall a refund claimed on an original return be allowed or made in any case unless the return is filed within three years of the due date,excluding extensions, of the return in respect of which the tax might have been credited.") (emphasis added).[1] Taxpayer appealed to the Magistrate Division, which held for the department. This appeal ensued, with taxpayer claiming estoppel.
1. Pertinent to taxpayer's claim is an extension that she obtained from the Internal Revenue Service (IRS), allowing her until October 15, 2001, to file her federal return for tax year 2000. That extension served to extend until October 15, 2004, the period in which she could claim a refund on her federal return. IRC § 6511(b)(2)(A). The difference between the federal and state statutes of limitation leaves taxpayer no state remedy unless the department is estopped from asserting the bar of ORS314.415(1)(b)(A).
On the question of estoppel, taxpayer testified that she called the department on April 9, 2004, and spoke with a *Page 22 
taxpayer assistance employee. Taxpayer asked the employee a question "regarding the tax year 2000 return with an extension and a refund." According to taxpayer, the employee told her that, given an extension, her 2000 return would be due August 15, 2004. Relying on that information, taxpayer filed her state return in July 2004.
Corroborating taxpayer's testimony regarding the phone call is the testimony of James Cason, a plumber and friend of taxpayer's who occasionally worked for taxpayer. Cason testified that he was in the room with taxpayer when she made the phone call, and that he heard what was said because taxpayer used a speaker phone. Cason's memory of the call was not clear, and he could not recall the specific wording of the question taxpayer asked the department employee, but he believed that the employee had stated that taxpayer's return was due August 15.[2]
To further corroborate taxpayer's description of the phone call, taxpayer testified that she called the department a second time, on June 10, 2005, to see if asking the same question she had asked during the 2004 call would elicit the same response. Taxpayer asked Donna, the department employee with whom she spoke: "With a 2001 tax return, with an extension and a refund, when are they due?" Donna answered August 15, 2005. Taxpayer then sought clarification, feeling that Donna had not understood her question. Donna stated that she had thought that taxpayer "was talking about the current year with an extension," but, upon realizing that such was not the case, corrected her answer to April 15, 2005. Taxpayer points to her conversation with Donna as further evidence that she was misinformed by the department employee with whom she spoke on April 9, 2004. *Page 23 
Donna's testimony at trial cuts against taxpayer's description of events. Donna admitted that she had worked on June 10, 2005, but could not recall speaking with taxpayer. Donna also testified that, had she been asked by which date the department would have to receive a return for tax year 2001, with an extension, in order for the taxpayer to qualify for a refund, the answer would be April 15, 2005, not August 15, 2005. Donna stated that she knew that April 15 was the correct date because of the frequent and extensive training department tax assistance employees must undergo year round, and which she had undergone in the 18 years she has worked for the department. In that regard, Joan Linn, the manager of the department's Tax Services Unit testified that the department makes sure that each of its tax assistance employees is correctly informed of the applicable law, and that the department places special emphasis on statutory due dates for the filing of returns, given the large number of questions the department receives regarding them.
Also cutting against taxpayer's claim of estoppel is the testimony of her certified public accountant of many years, Martin Henick. Henick, who prepared taxpayer's 2000 returns, testified that he believed that taxpayer had until October 15, 2004, to file her state return and still be eligible to receive a refund, based on his belief that Oregon law was the same as federal law on that score. Henick believed, however, that he had not told taxpayer of his belief before April 15, 2004. Henick also testified that taxpayer had not mentioned any misleading advice the department may have given her during a conversation the two had on August 27, 2004, a date after taxpayer had received notice that her refund claim was barred. Henick testified that he would have remembered such a matter if it had been mentioned.
 III. ISSUE
Should the department be estopped from denying taxpayer a refund?
 IV. ANALYSIS
2. "The elements of estoppel, as applied to taxing authorities, are: `(1) misleading conduct on the part of the department; (2) taxpayer's good faith, reasonable reliance on *Page 24 
that conduct; and (3) injury to taxpayer.'" Wright v. Dept. ofRev., 19 OTR 29, 34 (2006) (quoting Webb, 18 OTR at 383). The third element is not at issue in this case. "Regarding the first element, taxpayers must provide `proof positive' that the department misled them," id. at 34-35, which this court understands as a "stringent proof requirement" of "strong support." Hoyt Street Properties LLC v. Dept. of Rev.,18 OTR 313, 319 (2005).[3]
3. Taxpayer offers no proof of incorrect or misleading documents or actions, see Webb, 18 OTR at 384 (citing cases in which the court has found estoppel in such instances); instead, taxpayer offers only evidence of oral communication: the statements of the department employee which taxpayer asserts occurred during the 2004 phone call. However, as the court explained in Schellin v.Dept. of Rev., 15 OTR 126, 131 (2000), "[m]ere testimony that the government orally misguided taxpayer, is generally, by itself, insufficient to show `proof positive' that the taxpayer was misled." See also Webb, 18 OTR at 384 (applyingSchellin); Wright, 19 OTR at 35 (same). That is so for several reasons:
 "There are many possibilities for misunderstanding with oral communication. Taxpayers are often unfamiliar with taxation procedures. It is easy for them to become confused even where correct information is given. Additionally, the court often has no way to know the exact questions that taxpayers may ask when seeking direction from a government official. Taxpayers may phrase their questions in a manner which leads a government official to believe they were inquiring about something other than what they intended."
Schellin, 15 OTR at 132 (citations and internal quotation marks omitted). When the taxpayer's version of a conversation is disputed by the government officials with whom the taxpayer claims to have spoken, the court will rarely find the *Page 25 
required "proof positive" absent corroborative evidence or another compelling reason to believe the taxpayer. See id.
at 130, 135 (finding disputed oral evidence insufficient).
The evidence before the court in Tillamook Bay Comm. Coll. v.Dept. of Rev., 11 OTR 134 (1989), illustrates well the problems that arise when taxpayers rely on oral communications alone to show that the government has misled them. Tillamook BayCommunity College applied for a property tax exemption for certain property leased by the college. Id. at 135. The department denied the college's application, in part, because it was filed after the statutory deadline. Id. at 136. On appeal, this court rejected the college's claim of estoppel because:
 "Plaintiff's only `proof' in this instance consists of the testimony of plaintiff's president that he acted on the basis of two phone calls to the assessor. There is no corroborating evidence of what was asked, how much information was given the assessor or of the assessor's reply. The witness testified that an attorney called the assessor on plaintiff's behalf. Neither the assessor nor the attorney was subpoenaed to appear at trial nor was either deposed. No written memoranda of the telephone call was presented. Without more `fleshing out' of the totality of the circumstances, plaintiff fails to reach the required quantum of `proof positive.'"
11 OTR at 136-37. In Patton I v. Dept. of Rev., 18 OTR 111, 122
(2004), and Webb, 18 OTR at 384, the court again reiterated that "general" descriptions of oral conversations lack the specificity required to show "proof positive." See also Wright,19 OTR at 35 (describing the problems with "vague and inconsistent" testimony regarding oral communications).
Indeed, the court is aware of only one case in which an Oregon court has considered oral communication to constitute a part of "proof positive." In Pilgrim Turkey Packers v. Dept. of Rev.,261 Or 305, 493 P2d 1372 (1972), the taxing authority sent the taxpayer a form that, while technically correct, was ambiguous and confusing. Id. at 308. Among other problems, the form stated "State Tax Commission Form" at the top, yet the taxpayer was required to return it to the county assessor. Id. The taxpayer's secretary called the State Tax Commission (the department's predecessor) to *Page 26 
"obtain the name of the specific division of the department to which the form should be sent." Id. When connected with an employee described by the operator as "the proper person," the employee said, "Well, of course, it comes to us." Id. The court found "proof positive" of misleading conduct in the ambiguous form alone, but held that the taxpayer's claim of estoppel was made "even stronger" by the evidence of oral misinformation.Id. at 310.
4. What distinguishes Pilgrim Turkey from the cases rejecting oral communication is that the taxpayer offered enough indicia of reliability to "flesh out" its testimony and transform it into "proof positive." The taxpayer presented the court with both a misleading document and oral evidence that was clear, thorough, specific, and undisputed. Taxpayers who rely on oral communications alone must provide more, such as detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them. Even if a taxpayer cannot offer such memoranda, she is more likely to show "proof positive" that the government misled her if she describes the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each conversation; those persons' knowledge of taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning.
In the present case, taxpayer offers no evidence to support her claim of estoppel other than her own testimony regarding the 2004 and 2005 phone calls, as well as the testimony of Cason supporting her recollection of the 2004 call.[4] *Page 27 
Taxpayer failed to introduce into evidence any contemporaneous memoranda or other written records which might substantiate her or Cason's recollection of events. That is unfortunate, because the descriptions of both phone calls, by both taxpayer and Cason, are vague. The court does not know the exact form of the questions posed by taxpayer or whether taxpayer described her situation to the employees before asking the questions or otherwise clarified her meaning. The questions described by taxpayer in her testimony are unspecific in that they do not indicate what kind of extension taxpayer had, or whether she was referring to the return, the tax payment, or a timely claim for refund on an original return. The August 15 answer given by both Donna and the other department employee may have been correct, depending on the question asked.[5] Indeed, once taxpayer explained to Donna exactly what she was looking for, Donna changed her answer to April 15, 2005, the answer she testified that she would have provided had she been asked on which date a 2001 return is due if the taxpayer wants to receive a refund on that return.
5. The court recognizes the possibility that taxpayer did phrase her question clearly, thoroughly, and specifically in the 2004 phone call. However, the record in this case demonstrates the multitude and complexity of the ideas and concepts, and the consequent ease of confusion and miscommunication, present in any discussion of statutes of limitations and filing deadlines for returns. Taxpayer bears the burden of proof here and must prove by a preponderance of the evidence that there is "proof positive" that the department misled her. She has not done so.
 V. CONCLUSION
Based on the foregoing, the court concludes that taxpayer has failed to establish proof positive that the department misled her as to the due date for filing her tax year 2000 *Page 28 
personal income tax return in time to receive a refund. Now, therefore,
IT IS DECIDED that Defendant is not estopped from denying Plaintiff a refund on her 2000 personal income tax return and judgment should be for Defendant.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2003 edition. The relevant statutes did not change materially between April 15, 2001 and April 15, 2004.
[2] In an affidavit, Cason stated that "Ms. Webb asked the [employee] about the due date that tax year 2000 tax returns were due when you have an extension. We were told that the returns were due on August 15, 2004. Ms. Webb was very clear and specific in her questions." In that regard, taxpayer testified that she took notes during the April 9 phone call, but that they were unspecific, stating only the August 15, 2004, due date and that taxpayer was taking a trip that July, but not including other facts, such as the name of the department employee with whom she spoke. However, those notes were not introduced into evidence; taxpayer testified that she had mistakenly left them at her office and Cason stated in his deposition, without explanation, that taxpayer would "have to kill me" if taxpayer told him what happened to them.
[3] As an initial matter, the department argues that there is an inconsistency between the "proof positive" standard and the statement in Coos County v. State of Oregon, 303 Or 173, 181,734 P2d 1348 (1987), that "facts creating estoppel must be proved by a preponderance of the evidence." There is no inconsistency. Whereas "preponderance of the evidence" is the burden of proof carried by taxpayer in this case, "proof positive" is the quantum of proof required to show estoppel against a taxing authority.Johnson v. Tax Commission, 248 Or 460, 463, 435 P2d 302 (1967). Accordingly, taxpayer must prove, by a preponderance of the evidence, that there is proof positive that the department misled her.
[4] Unlike the 2004 call, the 2005 call occurred after the date when taxpayer's 2000 return was due if taxpayer wished to receive a refund: April 15, 2004. Taxpayer, therefore, could not have relied on the 2005 call in failing to file her 2000 return on time. See Demco Dev. Corp. v. Dept. of Rev., 280 Or 117,570 P2d 64 (1977) (holding that estoppel cannot be applied when the misleading conduct occurred too late for the taxpayer to have relied on it detrimentally). Taxpayer, however, does not claim to have relied on the 2005 call, but merely offers it as evidence corroborative of her description of the 2004 call. See Hoyt,18 OTR at 318-19 (stating that a court might consider such evidence in similar circumstances).
[5] For instance, taxpayers may defer filing their state personal income tax returns as long as the IRS allows them to defer filing their federal returns. ORS 314.385(1)(c); OAR150-314.385(1)-(B) (current edition). Among other things, the IRS allows individual income taxpayers to obtain an automatic four-month extension, until August 15, to file their federal individual income tax returns. CFR § 1.6081-4 (1999). Taxpayer obtained an extension from the IRS allowing her until October 15, 2001, to file her federal return for tax year 2000. *Page 29