DECISION
Plaintiffs appeal Defendant Department of Revenue (Department)'s denial of their application to defer property taxes on their primary residence for tax year 2009-10. Plaintiffs also appeal Department and Defendant Washington County Assessor (Assessor's actions that lead them to believe the subject property was in the Property Tax Deferral Program for Senior Citizens (Program) for tax year 2008-09. A telephone trial was held on January 25, 2010. Plaintiffs appeared on their own behalf. Plaintiff Grace Sandilands (Sandilands) gave testimony. Kelly Gladden (Gladden), Customer Service Supervisor, Washington County Department of Assessment Taxation, appeared on behalf of Assessor. Debra Saalfeld (Saalfeld) and Bram Ekstrand (Ekstrand), Oregon Department of Revenue, Property Tax Division, Deferral Unit, appeared on behalf of Department.
Plaintiffs' Exhibits 1 through 23 and Assessor's Exhibits A through I were offered and received. *Page 2 
 I. STATEMENT OF FACTS
In August 2007, Plaintiffs purchased their primary residence (subject property) that is located in Washington County. At the time Plaintiffs purchased the subject property, it qualified for the Program that required the Oregon Department of Revenue to annually pay assessed property taxes to Washington County Assessment and Taxation. Ekstrand testified that apparently, at the time of purchase Plaintiffs' title company overlooked the Oregon Department of Revenue's lien on the subject property for deferred property taxes, which was "unfortunate for the new buyers." Sandilands testified that on January 19, 2010, she spoke to a title company representative who told her that on the date of closing, property taxes (tax year was not identified) were paid to the Oregon Department of Revenue and that the check was not cashed by the Oregon Department of Revenue until January 2008. Saalfeld testified that the Department of Revenue contacted the title company, advising the title company that the Department of Revenue had to pay the 2007-08 property taxes. Saalfeld stated that the Department of Revenue tried to get the title company to reimburse it for the 2007-08 property taxes and it was not until March 2009 that the subject property's prior owner "settled the obligation."
In November 2007, Plaintiffs received a 2007-08 property tax statement for the subject property. (Def s Ex E-1.) That yellow colored statement was addressed to Plaintiffs, clearly stating that the property qualified for the "Senior/Disabled Tax Deferral Program," and the Oregon Department of Revenue would "pay all or part of the property Tax." (Id.) Plaintiffs' affidavit stated that when they received their first property tax statement after purchasing the subject property, Plaintiffs "rang" the county assessor's office and "were told that, as it was a yellow copy, it was for our information only and taxes were to be paid by another party, i.e., DOR or mortgage company." (Ptfs' Ex 1.) Gladden testified that the subject property's 2007-08 *Page 3 
property taxes were paid by both Plaintiffs' mortgage company and the Oregon Department of Revenue. Gladden testified that in accordance with ORS 311.806 each received a letter asking if it was "legally entitled" to a refund. She testified that Plaintiffs' mortgage company responded stating that it was "legally entitled" to a refund of the subject property's property taxes. Gladden testified that a refund check was issued to Plaintiffs' mortgage company.
Sandilands testified that on March 25, 2008, Plaintiffs received a check in the amount of $3,378.34 from their mortgage company.[1]
(Ptfs' Ex 1.) Sandilands testified that when she contacted her mortgage company she was told that on March 5, 2008, Washington County refunded the mortgage company's 2007-08 property tax payment because the subject property qualified for the Program.[2] Sandilands testified that after that telephone conversation with the mortgage company she contacted the Washington County Assessor and spoke to Erica who told her that the subject property was in the Program. Sandilands stated that she advised Erica that she had not filed an application to be in the Program and Erica responded that she did not need to file "a new application each year" because once a property qualifies then the taxes "were paid by the state continuously."
In October 2008, Plaintiffs received a yellow colored property tax statement, stating "SENIOR CITIZEN DEFERRAL" in the legal description portion of the property tax statement. (Ptfs' Ex 20 and Def's Ex E-2.) *Page 4 
Gladden testified that the "county uses the description SENIOR CITIZEN DEFERRAL" as a "flag" to direct telephone inquiries to a customer representative who is knowledgeable about the Program. Gladden testified that Plaintiffs' 2008-09 property tax statement should have included a statement as follows:
 "[A] mortgage company has requested your property tax information. This usually indicates that your lender has agreed to pay your property tax bill. If you do not have an agreement with your mortgage company to pay your taxes, you are responsible for timely payment of your property taxes, and this statement serves as your billing statement."
(Def's Ex E-3.) Gladden's example was a blank form containing the above statement. She did not submit an exhibit showing that the statement was included on the property tax statement addressed to Plaintiffs. Sandilands testified that she did not submit that portion of the statement as an exhibit because she did not have it. Even though Gladden believes Plaintiffs' property tax statement should have included the above statement because Plaintiffs' mortgage company requested a copy of the property tax statement, Plaintiffs' mortgage company did not pay Plaintiffs' 2008-09 property taxes. (Ptfs' Ex 2-10.) Sandilands testified that she believes she called "the county" when she received the 2008-09 property tax statement, but she cannot find any notes of a conversation. Sandilands testified that all notes of conversations between her and Assessor were kept "for her personal records," not in anticipation of litigation.
Sandilands testified and her affidavit stated that in November 2008, Plaintiffs received a "check from CitiMortgage which said, `Escrow Clearing Account, Escrow Refund,' which refunded surplus amounts from our Escrow Account." (Ptfs' Ex 1; 3-2.) Sandilands testified that a portion of her monthly mortgage payment was allocated to the payment of property taxes. Because Plaintiffs believed that they were "eligible for the Senior/Disabled Tax Deferral Program in the State of Oregon" and it was the second time Plaintiffs received a refund check *Page 5 
from their mortgage company for collecting monies in excess of amounts paid for property taxes, Plaintiffs wrote to CitiMortgage on November 20, 2008, asking the mortgage company to stop collecting money for property taxes. (Ptfs' Ex 22.)
Defendants agree that on March 2, 2009, Department notified Assessor that it "released" the subject property from the Program. (Def's Ex D-1.) Saalfeld testified that the "release" coincided with the removal of the 2007-08 property tax lien on the subject property. At trial, Sandilands asked why no one notified Plaintiffs that the subject property was no longer in the Program. Defendants agreed that no notification was sent to Plaintiffs because they were not in the Program and only the seller of the subject property qualified for the Program.
Sandilands testified that on "Saturday, June 27, 2009," Plaintiffs received a notice marked "DELINQUENT NOTICE FOR TAX YEAR ENDING: JUNE 30, 2009," from Washington County Assessment Taxation stating that the subject property's 2008-09 assessed property taxes were delinquent. (Ptfs' Ex 2-10.) Sandilands testified that this was the first time Plaintiffs knew that the property taxes had not been paid. Gladden testified that neither CitiMortgage nor the Oregon Department of Revenue paid Plaintiffs' 2008-09 property taxes until 2009 when CitiMortgage paid both the 2008-09 and 2009-10 subject property's assessed property taxes.
Sandilands testified that upon receipt of the delinquent notice she called Washington County and was "told DOR had removed us from the Senior Tax Deferral Program, that we were never on it, and we would have to apply to be on it." (Ptfs' Ex 1.) Sandilands testified that a property tax deferral application for senior citizens was filed on July 10, 2009. Department denied Plaintiffs' application on July 20, 2009, because Plaintiffs' application was not received between "January 1 and April 15 * * *. The county received your application on 07/14/09." *Page 6 
(Ptfs' Ex 4-1.) The parties agree that if Plaintiffs' application had been received between January 1 and April 15 they would have qualified for the Program.
 II. ANALYSIS
The parties agree that Plaintiffs failed to submit an application to participate in the Program for tax years 2008-09 and 2009-10 by the required due dates of April 15, 2008, and April 15, 2009. The question before the court is whether Defendants should be estopped from denying Plaintiffs' participation in the Program for tax years 2008-09 and 2009-10.
In the area of taxation, estoppel is granted in rare instances[2]
when the following three elements have been proven: (1) defendant's conduct misled plaintiff; (2) plaintiff had a good faith reliance on the conduct; and (3) plaintiff was injured by its reliance on defendant's conduct. Sayles v. Dept. of Rev., 13 OTR 324, 328 (1995). With respect to the first element, "taxpayers can claim estoppel against governmental taxing authorities only "when there is proof positive that the collector has misinformed the individual taxpayer.?" Webb v. Dept. of Rev. (Webb I),18 OTR 381, 384 (2005), quoting Johnson v. Tax Commission, 248 Or 460, 463,435 P2d 302 (1967). This court has concluded that "proof positive" is a "stringent proof requirement." Id.
Taxpayers have prevailed when there was proof of "incorrect or misleading documents sent by taxing authorities to the taxpayer," or proof positive of a taxing authority's "misleading course of conduct."Id. (Citations omitted.) However, there is "only one[3] case in which an Oregon court has considered oral communication to constitute a part of `proof positive.'" Webb v. Dept. of Rev. (Webb II), 19 OTR 20, 25 (2006).See Pilgrim Turkey Packers v. Dept. of Rev., *Page 7 261 Or 305, 310, 493 P2d 1372 (1972) (finding proof positive of misleading conduct in the ambiguous form alone, but also holding that taxpayer's claim of estoppel was made even stronger by evidence of oral misinformation.) Id.
Recent court decisions, specifically, Schellin v. Dept. of Rev.,15 OTR 126 (2000) (Schellin); Hoyt Street Properties LLC v. Dept. ofRev. (Hoyt), 18 OTR 313 (2005); and Sidhu v. Dept. of Rev. (Sidhu),19 OTR 207 (2007), illustrate the weight given to written rather than oral communication. In Schellin, taxpayer testified that "she was orally misled by employees at the assessor's office on two separate occasions."Schellin, 15 OTR at 135. The court found "such oral evidence insufficient to show `proof positive' that taxpayer had been misled." Id. It went on to state that "[w]ritten materials however, are given greater weight than oral testimony." Id. The court concluded that the written notification in the form of the Assessor's Recommendation that the taxpayer received was "technically correct," but "ambiguous" because it "was capable of producing more than one reasonable interpretation." Id. The court found that the taxpayer had shown "`proof positive' that the assessor misled her * * * and [] it was reasonable for taxpayer to rely upon those representations." Id. Similarly in Hoyt and Sidhu, taxpayers received documents (notices of adjustment) that clearly stated that their appeals must be filed within 90 days from the date of the notice. Both taxpayers filed appeals beyond the 90 days and argued that they were misled by representatives of the Department of Revenue. The court concluded that neither taxpayer could "offer proof positive that the department `affirmatively and expressly' told them to disregard the appeal period * * *." Sidhu, 19 OTR at 213.
Plaintiffs rely on both written documents and oral communications for their allegation that they were misled. Plaintiffs allege that they were misled when the 2007-08 property tax statement addressed to them, rather than the subject property's prior owner who actually *Page 8 
qualified for the Program, stated that the subject property qualified for "senior citizen deferral" and clearly stated that the document was a "SENIOR/DISABLED PROPERTY TAX STATEMENT." (Ptfs' Ex 21.) An error occurred when Assessor addressed the statement to Plaintiffs. Assessor never acknowledged to Plaintiffs that they did not qualify for the program until it received notice in 2009 from Department "releasing" the subject property from the Program. Plaintiffs allege that they were misled when Assessor wrote to their mortgage company, inquiring if it was entitled to a refund of 2007-08 property taxes, and then refunded property tax payments made on behalf Plaintiffs to their mortgage company. Plaintiffs allege that they were misled when they received a 2008-09 property tax statement, stating "SENIOR CITZEN DEFERRAL" in the legal description portion of the statement. Assessor alleges that it sent Plaintiffs' mortgage company a 2008-09 property tax statement in response to its request. There is no evidence to support Assessor's allegation. Each of the written documents, specifically the property tax statements and Assessor's letter to Plaintiffs' mortgage company, affirmatively stated or supported Plaintiffs' reasonable interpretation that the subject property qualified for property tax deferral. There were no actions by either Defendant to suggest that Plaintiffs had other than a good faith reliance on Defendants' conduct.
Plaintiffs allege that they relied on oral communications. To meet the standard of proof positive, taxpayers who rely on oral communication must provide "detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them[]" or describe "the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each conversation; those persons' knowledge of taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning." *Page 9 Webb II, 19 OTR at 26. Sandilands testified that her telephone conversation notes were kept for her personal use rather than for litigation. At trial, Sandilands identified by name Assessor's employees she spoke to and the date and summary of the telephone conversations. Sandilands testified that not until July 2009 was she informed that Plaintiffs' failure to file an application to be in Program resulted in the subject property's property taxes not being deferred. The July 2009 disclosure was in direct conflict with Sandilands's 2007 telephone conversation with Assessor's representatives and the information written on the property tax statements sent to Plaintiffs by Assessor.
The case before the court is similar to the situation in Schellin. LikeSchellin, the property tax statements sent to Plaintiffs are "capable of producing more than one reasonable interpretation" when viewed in the context of the oral information given to Plaintiffs. Schellin,15 OTR at 135. The 2007-08 property tax statement correctly stated that the subject property qualified for the Program; unfortunately it was addressed to Plaintiffs rather than the subject property's prior owner who actually qualified for the program. The result was a property tax statement that was both correct for the prior owner of the subject property and incorrect for Plaintiffs. When Plaintiffs contacted Assessor and stated that they had never applied to be in the Program, Assessor's response was that Plaintiffs were already "in" the Program and did not need to apply annually to remain in the Program. The 2008-09 property tax statement included the statement "SENIOR CITIZEN DEFERRAL" in the legal description. Based on Plaintiffs' prior communication with Assessor, Plaintiffs reasonably concluded when they received the 2008-09 property tax statement that they were in the Program and their property taxes were deferred. After receiving 2007-08 and 2008-09 property tax refund checks from their mortgage company, Plaintiffs wrote to their mortgage company stating that their monthly mortgage payment should *Page 10 
be reduced to eliminate collection of monies to annually pay property taxes because they were convinced, based on the written property tax statements and verbal communications with Assessor, that they were in the Program.
The unfortunate chain of erroneous written documents and verbal communications prevented Plaintiffs from filing a timely property tax deferral application. Department agrees that if Plaintiffs had filed a timely application, their subject property would have qualified and the subject property's property taxes would have been deferred. Plaintiffs' good faith reliance on Assessor's written documents and verbal communications resulted not only in their failure to file a timely application, but in Plaintiffs' injury when Assessor issued a delinquency notice, stating that Plaintiffs had failed to pay the subject property's annually assessed property taxes for two tax years and assessing interest for their failure to make timely payment.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiffs' claim of estoppel succeeds because Plaintiffs have shown `"proof positive' that the Assessor misled" them. Considering the written documents, specifically the property tax statements, and oral communications with Assessor's representatives, "it was reasonable for" Plaintiffs "to rely upon those representations." Schellin, 15 OTR at 135. Now, therefore, *Page 11 
IT IS THE DECISION OF THIS COURT that because Department agrees that if Plaintiffs' application had been received between January 1 and April 15 Plaintiffs would have qualified for the Program, and because Plaintiffs' failure to file a timely application was a direct result of Assessor's representatives stating that the subject property was enrolled in the Program, Plaintiffs' subject property qualifies for the Senior Citizens' Property Tax Deferral Program for the 2008-09 and 2009-10 tax years.
Dated this _____ day of March 2010.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This Decision was signed by Presiding Magistrate Jill A. Tanneron March 18, 2010.
 The court filed and entered the Decision on March 18, 2010.
[1] Plaintiffs' affidavit stated that the check was received on March 20, 2008; exhibits state that the check was received on March 25, 2008. (Ptfs' Ex 5-6.)
[2] Plaintiffs state that when they contacted the mortgage company on March 25, 2008, they were told that the property taxes were refunded because they "were `exempt' from paying property tax." (Ptfs' Ex 2-1.)
[2] "The policy of efficient and effective tax collection makes the doctrine of rare application." Johnson v. Tax Commission, 248 Or 460, 463,435 P2d 302 (1967).
[3] There are at least two cases considering oral communications that were decided in the Magistrate Division of the Oregon Tax Court: Wesemanv. Hood River County Assessor, TC-MD No 060723D (Mar 2, 2007); Semler v.Multnomah County Assessor, TC-MD No 00058F (May 24, 2000).