DECISION
This matter is before the court on Defendant's motion to dismiss, filed as part of its Answer on February 19, 2010, requesting that Plaintiff's appeal be dismissed. Plaintiff appeals Defendant's letter, dated July 7, 2009, disqualifying Plaintiff's subject property (189 acres), described as Account R4527 00100, from farm special assessment.
Oral argument was held in the Oregon Tax Courtroom, Salem, Oregon, on July 12, 2010. Norman L. Barnett (Barnett), Trustee, appeared and testified on behalf of Plaintiff. Eve Barnett and Clark Ellingson testified on behalf of Plaintiff. Robert Graper (Graper), Chief Appraiser, appeared and testified on behalf of Defendant.
 I. STATEMENT OF FACTS
The parties agree that on July 7, 2009, Defendant notified Plaintiff in writing that it disqualified 189 acres owned by Plaintiff from farm special assessment. In its July 7, 2009, letter, Defendant stated that it was disqualifying the subject property because "the farmland is no longer in a qualifying use." (Def's Ex D.) Defendant's letter explained that "[t]he potential additional taxes for farm use disqualifications will be deferred under ORS 308A.706(1)(a) when farmland becomes idle and does not change to a different special assessment." (Id.) The letter *Page 2 
stated that "[a]ny acres deferred under ORS 308A.706(1)(a) will no longer be specially assessed and will be assessed based on market value as calculated under ORS 308.156." (Id.)
Prior to the subject property being disqualified by Defendant, Plaintiff received a request from Defendant to complete a "2009 Farm Rent survey questionnaire * * * by May 1, 2009." (Def's Ex A.) In response, Barnett sent an email, dated April 15, 2009, stating that "we have not farmed it, or rented it to be farmed, since it came out CRP [Conservation Reserve Program]." (Def's Ex B.) After receiving Barnett's email, Graper testified that an appraiser inspected the property on June 10, 2009. That appraiser concluded that 15 acres owned by Plaintiff qualified for farm special assessment and the remaining 189 acres were not being farmed.
After receipt of Defendant's July 7, 2009, letter, Barnett telephoned Defendant and spoke to Susan DeBolt (DeBolt), Appraiser. Graper submitted a copy of DeBolt's "sleve notes," stating that "mag appeal" forms were "mailed out" on July 20, 2009, and again on November 30, 2009. (Def's Ex J.)
On July 29, 2009, Barnett responded to Defendant's July 7, 2010, letter, in an email entitled "Important additional information." (Def's Ex F.) Barnett wrote that "our land is being farmed to the extent feasible and that I continue to actively seek to have our land farmed wholly." (Id.)
On August 10, 2009, Graper responded in an email to Barnett's email and telephone conversations Barnett had with Defendant's personnel. (Def's Ex G.) In his email, Graper stated that the subject property was removed from special assessment and that "[o]ur letters to you included your options at this time." (Id.) Graper's second email on that date stated that he believed "that at this time you have a clearer understanding of your options. I am waiting to receive a fax you have indicated you were sending that would request rolling the disqualified forestland into farm special assessment." (Id.) *Page 3 
On August 12, 2009, Graper and DeBolt met with Barnett and Eve Barnett at the subject property. Barnett testified that he asked DeBolt "what the consequences of disqualification were." Barnett testified that DeBolt stated that Plaintiff:
 "would be assessed additional tax, and that it would be in the form of a lien, so that we would not have to pay anything now, and would only have to [pay] the tax if we did not do what we needed to do to correct the problem, and sold the land. If we did correct the deficiency, the tax would be cancelled and they would restore the land to farm deferral. She also told us that we could appeal the disqualification within 90 days, if we wanted to, but that as soon as they saw evidence of our being in compliance, they would put any land they disqualified back into tax-deferred status, and cancel the tax."
(Ptf's Ltr at 1-2, Apr 27, 2010.) Barnett testified that "[g]iven Ms. DeBolt's assurance that there would be no immediate negative consequences if they did disqualify some land, I saw no need to appeal." (Id. at 2.)
Barnett testified that he "gave the matter no more thought until I got my tax bill some time later — after the appeal period had expired." (Id.) In his letter to the court dated April 27, 2010, Barnett wrote that on November 30, 2009:
 "I called the tax office to let them know that the assessors had told us that no additional tax would be due now, and asked them to remove the additional tax. They told me that what the assessors told us was incorrect, and the total tax was due shortly. I then called the Assessor's office and spoke with Mr. Graper, who told me that what Ms. DeBolt told me pertained only to forest land, and they had disqualified farm land. I pointed out that as we had viewed both [parcels], and Ms. DeBolt did not differentiate when she gave us the information, she had given us the impression that the information she gave us pertained to all our land. I said I wanted to appeal, and realized the 90-day appeal period had expired, and asked Mr. Graper for a letter to file with my appeal that explained what had happened. He refused. As I was within 90 days of learning from my tax bill that I had been misled, I filed with a letter explaining that we had been misled by an assessor to believe an appeal was not necessary if we planned to correct any deficiency. We did file, however, well within 90 days after learning that this was incorrect, and we respectfully requested that the Court allow our appeal."
(Emphasis in original.) *Page 4 
Defendant submitted DeBolt's notes from her November 30, 2009, telephone conversation with Barnett. In her notes, DeBolt wrote that:
 "he [Barnett] questioned his value for tax lot 4527-100. He was in shock and didn't understand. I explained to Mr. Barnett that he came out of special assessment due to non-farming. Rob and myself talk with [him] about the disq and visit property. Walked the property. He wanted to appeal the farm disq. and request a review form to appeal his values. I mailed out 3 review forms 2 mag forms."
(Def's Ex J.)
On December 12, 2009, Barnett emailed Graper, seeking Graper's assistance in "correcting a misimpression." (Def's Ex L.) Barnett wrote that he:
 "recently received a tax bill that is more than three times what we paid last year, and when we inquired if we could separate out what was due to the disqualified land, as we were told we did not have to pay that, we were told we could not, and owed the whole amount. Accordingly, we now see the need to appeal, and would like to file with the magistrate as soon as possible. However, due to the misimpression, the 90 day window has expired. I am writing to ask if you could assist us, in some way, to have our window to file an appeal renewed or reopened." (Id.)
Plaintiff filed its Complaint on January 14, 2010. In response to Plaintiff's Complaint, Defendant filed a motion to dismiss.
 II. ANALYSIS
The parties agree that Plaintiff did not timely appeal Defendant's disqualification of the subject property from farm special assessment. The issue before the court is whether Plaintiff's appeal of the disqualification must be dismissed. Plaintiff argues that Defendant should be estopped from denying the subject property's farm special assessment because they relied on oral communications with Defendant's representatives which led Barnett to conclude that there was no immediate financial detriment to him resulting from the disqualification and no reason for him to challenge the disqualification. *Page 5 
In the area of taxation, estoppel is granted in rare instances[1]
when the following three elements have been proven: (1) Defendant's conduct misled Plaintiff; (2) Plaintiff had a good faith reliance on the conduct; and (3) Plaintiff was injured by reliance on Defendant's conduct. Sayles v. Dept. of Rev., 13 OTR 324, 328 (1995). With respect to the first element, "taxpayers can claim estoppel against government taxing authorities only `when there is proof positive that the collector has misinformed the individual taxpayer.'"Webb v. Dept. of Rev., 18 OTR 381, 384 (2005), quotingJohnson v. Tax Commission, 248 Or 460, 463, 435 P2d 302 (1967). This court has concluded that "proof positive" is a "stringent proof requirement." Id.
Taxpayers have prevailed when there was proof of "incorrect or misleading documents sent by taxing authorities to the taxpayer," or proof positive of a taxing authority's "misleading course of conduct."Id., citations omitted. However, there are few cases in which an Oregon court has considered oral communication to constitute a part of `proof positive.'" See Pilgrim Turkey Packers v. Dept. of Rev.,261 Or 305, 310, 493 P2d 1372 (1972) (finding "`proof positive' of misleading conduct in the ambiguous form alone, but held that the taxpayer's claim of estoppel was made `even stronger' by the evidence of oral misinformation.") Webb v. Dept. of Rev., 19 OTR 20, 26 (2006).
In this case, Barnett repeatedly testified that he relied on Defendant's representatives' oral communication. To meet the standard of proof positive, taxpayers who rely on oral communication must provide evidence such as "detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them" or describe `the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each *Page 6 
conversation; those persons' knowledge of taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning." Webb, 19 OTR at 26.
Barnett testified that he engaged in separate telephone conversations with Defendant's representatives. Barnett primarily relies on one in-person conversation with DeBolt which occurred on site at the subject property. The parties agree that in-person and telephone conversations in addition to email exchanges occurred among Barnett and various Yamhill County personnel. Barnett and his wife, Eve Barnett, concluded from the in-person conversation with DeBolt that they would not be paying an additional tax as a result of the disqualification.
The case before the court is similar to the situation inSchellin v. Dept. of Rev., 15 OTR 126 (2000) (Schellin). InSchellin, taxpayer testified that "she was orally misled by employees at the assessor's office on two separate occasions."Id. at 135. The court held that "such oral evidence [is] insufficient to show `proof positive' that taxpayer had been misled."Id. It went on to state that "[w]ritten materials however, are given greater weight than oral testimony." Id. The court concluded that the written notification in the form of the Assessor's Recommendation that the taxpayer received was "technically correct," but "ambiguous" because it "was capable of producing more than one reasonable interpretation." Id. The court held that the taxpayer had shown "`proof positive' that the assessor misled her * * * and [] it was reasonable for taxpayer to rely upon those representations."Id.
In the case before the court, the oral communication between the parties confirms the court's prior holding of how difficult it is relying solely on oral communication to show that Defendant's conduct misled Plaintiff. It appears to the court that Barnett was and may still be confused about "postponed" or "deferred" tax assessment resulting from the farm special assessment disqualification and how the subject property would be taxed the first year after the disqualification. The disqualification of Barnett's other property that was forest land
 *Page 7 
special assessment, which occurred at the same time as the farm special assessment disqualification, may have also contributed to Barnett's lack of understanding.
There was no testimony about oral communications addressing the issue of how the subject property would be taxed after the disqualification. Graper describes taxation after disqualification as "annual taxes at market value due to the special assessment being removed." (Def's Resp to Mot to Dismiss at 4.) Barnett's written communications suggest that that subject was not discussed by the parties or Barnett has no recollection of that subject being discussed other than in the context of the "deferred" tax assessment. Barnett's testimony shows that he did not understand that there was a difference between postponed or deferred additional tax and annual tax assessments or "annual taxes at market value." (Id.)
During verbal communications, there is no statutory requirement for county officials to anticipate or raise on their own initiative all tax issues related to a tax program. The difficulty is for someone who knows nothing or little about a subject to ask the right questions. County officials respond to questions asked; if a question is not asked, then there is no shared information. Here, absent documented oral communication about current tax year valuation, there is no positive proof that Defendant misled Plaintiff about how the subject property would be value in the first year after the disqualification.
The subject of valuation and future tax assessments were explained in Defendant's letter dated July 7, 2009. In a separate sentence, Defendant's letter stated:
 "Any acres deferred under ORS 308A.706(1)(a) will no longer [be] specially assessed and will be assessed based on market value as calculated under ORS 308.156."
(Def's Ex D.)
Although the sentence states that the subject property will be valued and assessed at market value after the subject property is no longer in the farm special assessment program, the *Page 8 
sentence is placed within or in close proximity to sentences discussing the deferral of potential additional taxes. To assist someone who has no prior understanding of the law and is trying to understand the letter's content, the sentence placement could have been more prominent and included new subheadings to alert the reader. However, the words in the sentence are not misleading. The sentence is not "ambiguous," and it was not "capable of producing more than one reasonable interpretation."Schellin at 135.
The court concludes that Plaintiff failed to prove that "Defendant's conduct misled" Barnett. Having failed to prove one of the three required elements of promissory estoppel, Plaintiff's appeal is dismissed.
This is very unfortunate outcome for Plaintiff because Barnett testified that it is his belief that the subject property meets the statutory requirements for farm special assessment. There are no statutory provisions allowing the court to forgive or erase the decision made by Plaintiff to forgo filing a timely appeal of Defendant's disqualification. Now, therefore,
IT IS THE DECISION OF THIS COURT that Defendant's motion to dismiss is granted.
Dated this ___ day of November 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron November 8, 2010. The Court filed and entered this documenton November 8, 2010.
[1] "The policy of efficient and effective tax collection makes the doctrine of rare application." Johnson v. Tax Commission,248 Or 460, 463, 435 P2d 302 (1967).